## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

MARIETTA GOODMAN

VERSUS

FRIENDS OF WWOZ, INC.

CIVIL ACITON

JUDGE

MAGISTRATE

### COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Marietta Goodman, who is a person of full majority, domiciled in the State of Louisiana and who resides in a Parish within this Judicial District, who respectfully represents the following:

### NATURE OF THE ACTION

This is an action bought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of racial discrimination, retaliation, and hostile work environment, all in violation of Title VII.   The Plaintiff, Marietta Goodman, the Defendant's office manager, was subjected to race discrimination because of her race Black, by the Defendant's General Manager, Beth Utterback, when she was frequently called "**girlie**", and she was berated in front of staff and volunteers.   Plaintiff also witnessed inappropriate actions between Beth Utterback and another employee, all which contributed to the hostile work environment.   As alleged with greater particularity in paragraph eleven below, Plaintiff was wrongfully discharged by Beth Utterback, General Manager, in retaliation for the erroneous belief that Plaintiff had given an interview to the press about another employee's complaint of discrimination.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. sec.1332.  The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Title I of the Civil Rights Act of 1991.

3. The employment practices alleged to be unlawful were at all times committed in the United States District Court for the Eastern District of Louisiana.

## PARTIES

4. Marietta Goodman is a resident of Orleans Parish, Louisiana.

5. At all relevant times, Defendant has been a domestic corporation providing a radio station domiciled in Orleans Parish and doing business in the State of Louisiana; and at all times has had at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. Sections 2000-e-(b), (g) and (h).

7. At all relevant times, all material facts occurred within the jurisdiction of this Court.

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Marietta Goodman filed a charge of discrimination with the Equal Employment Opportunities Commission (hereinafter referred to as EEOC), Charge Number 461-2018-01262, alleging she had been discriminated against because of her race, Black; and that she had been retaliated against because the Defendant erroneously believed that Plaintiff had given a statement

2

and/or interview with the press concerning another WWOZ's employee's charge of discrimination.

9. A Right to Sue was issued by EEOC on October 24, 2018 and received by Plaintiff on or about October 26, 2018.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. Marietta Goodman was hired as the Office Manager for WWOZ, Inc. in November of 2016 by Arthur Cohen, the General Office Manager.  Plaintiff worked well with Mr. Cohen until he retired in November of 2017, and Beth Utterback was hired to replace Mr. Cohen as General Office Manager in June of 2017.   On Ms. Utterback's first day of work, she introduced the staff to Louis Dudoussat, whom she stated was a "friend".  After the first day of Beth's arrival, Mr. Dudoussat showed up at our office every day, and various employees asked me about Beth and Louis relationship, and rumors began to circulate that Louis and Beth were in a romantic relationship. Plaintiff refrained from participating in the rumor mill, because of her position as Office Manager. Beth asked Plaintiff and other staff members to circulate flyers advertising Louis' car salesmanship skills.

Several weeks after her hire, Ms. Utterback overheard Plaintiff discussing with another employee, the sale of a low-mileage used SUV that was available through a mechanic friend of Plaintiff's.  Ms. Utterback informed Plaintiff that Mr. Dudoussat was looking for a vehicle since he had recently lost his job and his vehicle, and she would like Plaintiff to arrange for Beth and Louis to check out the SUV.  Plaintiff was reluctant to make the arrangements for the SUV, but she also was afraid to say "no" to her new boss.  Plaintiff accompanied Beth and Louis to the mechanic's shop to test drive the

3

SUV which was owned by the father of the mechanic, and a long term friend of Plaintiff. During the drive to the mechanic shop, Beth and Louis kissed while at a traffic light, and referred to each other with endearing terms during the ride.  It made Plaintiff very uncomfortable to witness this behavior between Beth, her boss, and Louis a married man.  The sale of the vehicle to Louis failed because Beth tried to get the seller to lower the agreed upon sales price, and Beth insulted the seller, a 85 year old Black male, by pulling cash from her bosom and saying "this is all the car is worth so take it or leave it."

Following the car sale incident, Ms. Utterback's attitude towards Plaintiff became hostile. Utterback would raise her voice frequently when addressing Plaintiff;  she tore down signage Plaintiff had posted around the premises to advise staff and volunteers to keep the office clean; and she frequently referred to Plaintiff as "**girlie**," despite Plaintiff asking her repeatedly not to refer to her with that term.

Weeks following the car incident, Ms. Utterback asked Plaintiff to place an advertisement for a job opening of "Director of Special Projects at WWOZ", and to include a date/time specific deadline for applicants to respond.  Ms. Utterback informed Plaintiff that she intended to hire Louis Dudoussat for the position of Director of Special Projects, and she would not be interviewing any of the applicants for the position, but she had to go through the formality.  Ms. Utterback announced to the staff the hiring of Louis, five hours before the deadline for the job had expired.  Word of the newly hired "Director" quickly spread, and Plaintiff was forced to explain to several disappointed applicants that the position had been filled.  Many of the applicants had been previous employees and/or volunteers for WWOZ and they were upset with Plaintiff because they were not given the courtesy of a phone call, email, or interview.

Prior to hiring Mr. Dudoussat, as the Director of Special Projects, Ms. Utterback had hired him as a "contract employee" and he worked directly in Utterback's office. Following the promotion to Director of Special Projects, Ms. Utterback went on a shopping spree purchasing electronics and furniture for the office of Director of Special Projects. Another manager who had been responsible for staff phone purchases, inquired if Plaintiff had authorized the purchase of Mr. Dudoussat's "iPhone", because the price far exceeded the price range of employee's phones.

Ms. Utterback sent an email to Plaintiff and another employee, Beau Royster, the HR Director, asking them both to complete an application for a grant for WWOZ. Royster informed Plaintiff that in the past all grant applications had been started and completed by the Director of Development and their staff; and that he would speak to Ms. Utterrback about the past practices. Plaintiff and Royster, went to Ms. Utterback's office to discuss the matter, and before they could finish speaking she berated both of them with vulgar language, yelled at them and told them both she was "tired of people telling her what's not their 'f…king' job". Utterback went on to say that "the next person to say 'what's not their job' would be fired". After that exchange, Plaintiff became the new grant administrator for fear of losing her position.

Utterback and Dudoussat spent hours in Utterback's office daily with the door locked, and refusing to answer or admit staff into the office. Utterback and Dudoussat would emerge from the office around 11am, and take a two hour lunch break. Plaintiff was subjected to staff and volunteers all gossiping about this behavior which caused Plaintiff much anxiety as she tried to perform her duties, and keep the office running smoothly. During this period, various paid staff and volunteers informed Plaintiff that

they had witnessed embraces and kissing between Utterback and Dudoussat, which made them uncomfortable, and further contributed to Plaintiff's anxiety.

In May of 2018, there was a story about WWOZ featured in the local newspaper, which told the story of a former employee who had recently filed an EEOC complaint that alleged WWOZ had a hostile workplace environment for black women. The article went on to cite current and former employees as sources which confirmed the allegations. The day following the publication of the article, Utterback approached Plaintiff and asked her if she had been one of the sources for the article, or if she knew who had spoken to the reporter. Utterback informed Plaintiff that she would fire the person who spoke to the reporter once she had learned of their identity. Plaintiff denied any involvement with the article or the reporter.

A month following the publication of the first article, a second article was published, alleging that WWOZ had restricted employee disclosures. Utterback again approached Plaintiff and told her that she would fire the black woman who spoke to the reporter as soon as she identified the person. A few days following the second article publication about WWOZ's workplace issues, several WWOZ employees received an anonymous letter accusing Utterback and Dudoussat of a romantic relationship and complaining that the relationship was creating problems for the workforce. Again, Utterback approached Plaintiff and informed her that when she identified the author of the letter they would also be fired. On June 29, 2018, (employee appreciation day at WWOZ), Utterback fired Plaintiff without giving her any reason or explanation for her dismissal. Plaintiff had no involvement with the articles which were published in the newspaper, or the letter which was circulated about Utterback and Dudoussat's

6

relationship. Plaintiff strongly believes that she was wrongly discharged because of Utterback's erroneous belief that Plaintiff was the unidentified black female source for the WWOZ newspaper publications about workplace discrimination.

12.  The effect of the practices complained of in paragraph 11 have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, ruin her reputation in the community, and deny her future employment opportunities, all because of the Defendant's erroneous belief that Plaintiff had spoken to the press about discriminatory practices at WWOZ alleged by former employees; and in retaliation for Plaintiff exercising her federally protected right to speak about discriminatory practices.

13.  The unlawful practices complained of in paragraph 11 above were intentional.

14. The unlawful practices complained of in paragraph 11 above were done with malice or reckless indifference to the federally protected rights of Ms. Goodman.

15. The unlawful practices complained of herein have caused Ms. Goodman to suffer economic injuries, including, but not limited to lost wages, as well as pecuniary and non-pecuniary injuries.

16. The unlawful practices complained of herein have caused Ms. Goodman emotional damages, loss of self-esteem, and irreparable damage to her professional reputation.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, Marietta Goodman, requests that this Court:

7

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in employment practices which violate Title VII of the Civil Rights Act of 1964, as amended, when they discriminated on the basis of race, Black, and in retaliation against Plaintiff for exercising a federally protected right to speak about discrimination in the workplace; and for creating a hostile work environment.

B. Order Defendant Employer, its officers, successors, assigns, to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals, and which eradicate the effects of its past and present unlawful practices.

C. Order Defendant Employer, its officers, successors, assigns to make whole, Plaintiff, Marietta Goodman, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 11.

D. Order Defendant Employer, its officers, successors, assigns, to make whole, Plaintiff, Marietta Goodman, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in paragraph 11, including, but not limited to, emotional pain and suffering, inconveniences, loss of enjoyment of life, lowered self-esteem and humiliation, in amounts to be determined at trial.

E. Grant such further relief as the Court deems necessary and proper under the circumstances.

F.  Award Plaintiff the cost of this litigation.

Respectfully submitted,

Lillian M. Thornton LSB#255525
48 Heritage Lane
New Orleans, LA 70114
(504) 486-7700

PLEASE SERVE:

JOHN K. ETTER
620 N. Carrollton Ave.
New Orleans, LA 70119